IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MICHAEL L. PINKERMAN, SR.,
*Administrator*,
LAURA J. PINKERMAN,
*Administratrix of the Estate of*
MICHAEL L. PINKERMAN, JR.,

　　　　Plaintiffs,

　　vs.                                                    CIVIL ACTION No. 3:21-CV-580

CABELL COUNTY COMMISSION,
*ET AL.*,

　　　　Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

　　Pending before the Court are the following motions: ***Defendants' West Virginia State Police and Sgt. Losh's Motion to Dismiss*** and supporting ***Memorandum of Law*** (ECF Nos. 33, 34); ***Defendants Village of Barboursville and Darren McNeil's Motion to Dismiss*** and supporting ***Amended Memorandum of Law*** (ECF Nos. 39, 70); and Plaintiffs' letter-form motion/request for additional time to obtain counsel and/or to stay this action pending resolution of the underlying criminal proceeding against Plaintiff Michael L. Pinkerman, Sr. (ECF No. 86).

　　By Order entered on October 29, 2021, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition. (ECF No. 32)

　　As an initial matter, the undersigned notes that this civil action has a companion case also pending before this Court, *Michael L. Pinkerman, Sr. and Laura J. Pinkerman v. Cabell County Commission, et al.*, case number 3:21-cv-00579, in which the undersigned submitted a Proposed Findings and Recommendation of staying the matter pending resolution of the underlying criminal

1

proceedings that have been filed against Plaintiff Michael L. Pinkerman, Sr. in State court. After having examined the Complaint (ECF No. 1) filed in this action, the undersigned likewise concludes that this case should be stayed and removed from the active docket of this Court for the reasons stated *infra*.

## PROCEDURAL HISTORY

On October 27, 2021, Plaintiffs (when appropriate, hereinafter referred to as "Michael Sr." and "Laura"), *pro se*[1], filed their Complaint against the following Defendants: Cabell County Commission; Cabell County Sheriff's Department (hereinafter referred to as "CCSD"); Sheriff Charles Zerkle; Lieutenant Michael Adkins; Lieutenant Dale Enochs, II; Sergeant Robert McQuaid, Retired; Corporal Terry McFann, II; Deputy Hunter Neil; Deputy 1st Class Jared Cremeans; Corporal James Johnston; Deputy Brady Hinchman; Deputy Nathaniel Rodgers; Sergeant Steven Vincent; Corporal Matthew Siebel; Sergeant Kevin White; Deputy Dakota Render; Deputy Joshua Parsons; Deputy 1st Class Preston Stevens; S[e]rgeant T.S. Blatt[2]; West Virginia State Police Department; First S[e]rgeant G.N. Losh; Barboursville Police Department; Darren McNeil, Barboursville Police Chief; and "Unnamed Agents, Officers, and Employees of the Cabell County Sheriff's Office, Barboursville Police Department and West Virginia State Police Department involved in the 10/30/2019 raid, before and after at 4036 Blue Sulphur Road Ona, W.V. or those who contributed to the death of Michael L. Pinkerman, Jr. in their individual capacities." (ECF No. 1)

---

[1] Because Plaintiffs are proceeding *pro se*, the documents they have filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

[2] There is no indication in the docket that T.S. Blatt was ever served with process and there is no answer or response filed on behalf of this named Defendant. Although Plaintiffs identify this Defendant as a member of the CCSD, in the companion case pending before this Court, noted *supra*, the County Defendants denied that T.S. Blatt is a Cabell County Sheriff's Deputy. (See 3:21-cv-00579, ECF No. 4 at 4, n.4)

On December 9, 2021, Defendants West Virginia State Police Department (hereafter referred to as "WVSP") and Losh filed their Motion to Dismiss and Memorandum of Law in support of same (ECF Nos. 33, 34); subsequently, the undersigned issued a <u>Roseboro</u> notice[3] to Plaintiffs to respond to Defendants' motion by December 23, 2021 (ECF No. 35).

On December 9, 2021, Defendants McNeil and the Village of Barboursville[4] filed their Motion to Dismiss and Memorandum of Law in support of same (ECF Nos. 39, 40). On December 10, 2021, the undersigned issued a <u>Roseboro</u> notice to Plaintiffs to respond to Defendants' motion by December 27, 2021 (ECF No. 41).[5]

On December 9, 2021, Defendants Cabell County Commission, Cabell County Sheriff's Department, Zerkle, Adkins, Enochs, McQuaid, McFann, Neil, Vincent, Johnston, Cremeans, Hinchman, Rodgers, Siebel, Render, White, Parsons, and Stevens (hereinafter collectively referred to as "the County Defendants") filed their Answer to Plaintiffs' Complaint and Defendants Cabell County Commission, Cremeans, and Johnston filed their Counterclaim against Plaintiffs (ECF No. 37).

On December 23, 2021, Plaintiffs filed their Response in opposition to Defendants WVSP and Losh's motion (ECF No. 74); on December 29, 2021, Plaintiffs also filed their Response in opposition to Defendants Village of Barboursville and McNeil's motion (ECF No. 76); and on December 30, 2021, Plaintiffs filed their Response to the County Defendants' Answer and Counterclaim (ECF No. 77).

---

[3] Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975); because Plaintiffs are acting *pro se*, the Court issued its Order notifying Plaintiffs of their right to file a response to Defendants' Motion and further ordered that Plaintiffs file any response with the Clerk of this Court.

[4] This Defendant asserts that it was improperly named as the Barboursville Police Department, accordingly, the undersigned refers to this Defendant by the proper name herein.

[5] These Defendants filed an Amended Memorandum of Law in support of their Motion to Dismiss on December 15, 2021 (ECF No. 70), thus causing the undersigned to issue another <u>Roseboro</u> Notice to Plaintiffs permitting them to file any response thereto by December 29, 2021 (ECF No. 71).

On January 3, 2022, Defendants WVSP and Losh filed their Reply in support of their motion (ECF No. 78).

On January 6, 2022, Plaintiffs filed an "Amend Response" to Defendants' Village of Barboursville and McNeil's Amended Memorandum of Law as well as an "Amended Response" to these Defendants' Motion to Dismiss (ECF Nos. 81, 82). On January 10, 2022, Plaintiffs filed their "Final Remarks" (ECF No. 82).

On January 26, 2022, the undersigned entered an Order directing Plaintiffs to obtain counsel in this matter due to their prosecuting this wrongful death action on behalf of their son's estate in their capacities as Administrator and Administratrix and not being licensed attorneys in this State; the undersigned allowed Plaintiffs until March 1, 2022 to notify the Court if they had obtained counsel (ECF No. 83). Plaintiffs filed a request for additional time to obtain counsel on February 28, 2022 (ECF No. 84), and the undersigned again permitted Plaintiffs until May 1, 2022 to notify the Court if they secured counsel to represent their interests herein (ECF No. 85). Finally, on April 29, 2022, Plaintiffs requested an additional extension of time to obtain counsel and/or to stay these proceedings pending the final outcome in Plaintiff Michael L. Pinkerman, Sr.'s state criminal action (ECF No. 86).

## BACKGROUND OF CASE

This lawsuit stems from the execution of a search warrant and officer involved shooting on October 30, 2019, resulting in gunshot injuries to law enforcement and to Plaintiffs' adult son, Michael L. Pinkerman, Jr. (hereinafter referred to as "the Decedent"), resulting in his death.[6]

## PLAINTIFFS' FACTUAL ALLEGATIONS

---

[6] For the sake of simplicity, the undersigned incorporates by reference a more detailed background of this case as set forth in the Proposed Findings and Recommendation submitted in the companion matter, 3:21-cv-00579, as the events complained of in this civil action are nearly identical to those alleged in the companion case.

As noted in the companion case, number 3:21-cv-00579, Plaintiffs filed their Complaint invoking federal question jurisdiction claiming entitlement to relief under 42 U.S.C. §§ 1983 and 1988 alleging that Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendment to the extent that Defendants employed excessive force, unreasonable search and seizure, willful false arrest, false imprisonment, fabrication of evidence, tampering with evidence, false accusations of a crime, in addition to other acts of misconduct.

In this civil action, Plaintiffs set forth additional background information about their son, the Decedent, acknowledging his faults and recognizing his strengths, but ultimately, Plaintiffs allege that the events leading up to the Decedent's death on October 30, 2019 were avoidable and based on information Plaintiffs were unaware and still seek to obtain to no avail (ECF No. 1 at 7-16). Plaintiffs allege that a supplemental incident report indicated Defendants McQuaid, Vincent, Cremeans, and Stevens presented to Plaintiffs and the Decedent's residence at 4036 Blue Sulphur Road to do a welfare check, and indicate that they were trespassing on private property. (Id. at 16-17) Plaintiffs state that neither were present during the welfare check, but assert that Defendants McQuaid, Vincent and Cremeans violated the Decedent's Fourth Amendment rights. (Id. at 17-18) Plaintiffs allege that Defendant Cremeans used a fabricated search warrant for an alleged stolen firearm to execute a "deadly assault" against Plaintiffs and the Decedent at their residence; Plaintiffs allege there is photographic and other evidence related to this search warrant that has not been turned over to Plaintiffs to date. (Id. at 18-23)

Plaintiffs then allege that on October 30, 2019, they were about to wake up the Decedent for dinner when suddenly, ten CCSD deputies surrounded their residence to execute a misdemeanor search warrant, namely: Defendants Vincent, Johnston, Cremeans, Hinchman, Rodgers, Siebel, Render, White, and Parsons. (Id. at 23-24) Plaintiffs (specifically Laura) allege

hearing "5-6 loud pounding thuds at the back kitchen door" and "5-6 men pointing assorted firearms at me" and yelling "Open the door!" multiple times (Id. at 23-24) Because Plaintiffs' dog reached the door first, Laura attempted to restrain it and told Defendant Vincent that she was going to put her dog up first. (Id. at 25) Plaintiffs allege that Defendant Johnston had a door ram and hit the upper part of the back kitchen door causing glass to go everywhere. (Id. at 25-26) During this time, Michael Sr. came into the kitchen from the bathroom while deputies were yelling at them to open the door, although Michael Sr. was unable to open the door. (Id. at 26) Plaintiffs allege that while Michael Sr. struggled to open the door, Defendant Vincent yelled at him if he was armed and whether the Decedent was there. (Id. at 26-29) Plaintiffs then allege that the Decedent "rushed" into the kitchen from his bedroom, when they hear a deputy say, "Gun!", although Plaintiffs state they did not see a gun in the Decedent's hands. (Id. at 26-30) Plaintiffs then allege that suddenly the deputies outside opened fire into their house, striking Michael Sr.'s right hand and side, and the Decedent multiple times. (Id. at 29-30) After the initial shooting in the kitchen, Plaintiffs allege Michael Sr. advised the deputies that he had been hit, they told him to open the door, and forcing the dead bolt open, Michael Sr. was able to unlock the door and was ordered outside by Defendant Vincent. (Id. at 30)

Plaintiffs allege that once outside of their house, Defendant Rodgers "begins assaulting [Michael Sr.], using his knee" and handcuffs him forcefully, hurting his right arm and shoulder. (Id.) Though Defendant Rodgers warned Michael Sr. not to resist arrest, Michael Sr. denies that he resisted arrest, because he did not know he was going to be handcuffed. (Id.)

As Plaintiffs were being led away from their house by Defendant Neil, Michael Sr. alleged that he saw officers breaking their dining room storm door and dining room window and then "2 seconds later I hear more gunfire. I look at my Wife saying 'They just Murdered our son!' " (Id.

at 30-31) Michael Sr. alleges that a black Cabell County Sheriff's pickup truck was backed up to his son's bedroom window and "either" Defendant Stephens or defendant deputy John Doe was standing in the truck pointing a rifle at his son's bedroom window. (Id. at 31) Plaintiffs indicate they did not understand what was going on. (Id.)

Michael Sr. alleges that the handcuffs were put on him too tight, and that Defendant Neil would not loosen them, out of fear for his own safety; Michael Sr. "informed Deputy Neil that if I wanted to hurt him that these handcuffs wouldn't stop me from doing that. I tell him that I'm not going to hurt him, I stated I knew where he lived." (Id.) Michael Sr. again advised Defendant Neil that his hand was bleeding, and his side was still hurting – Defendant Neil led him to an ambulance medic who confirmed that Michael Sr. had a deep graze wound that needed to be treated. (Id.)

Michael Sr. alleges that Defendant McNeil of the Barboursville Police Department was present at the scene and that he "helped with get[ting] the Decedent [f]ired from his job at the CCERC on May 9, 2019." (Id. at 31-32) Defendant McNeil informed Plaintiffs that the Decedent "is no longer with us." (Id. at 32)

Plaintiffs then allege that Defendant Neil escorted them to Cabell Huntington Hospital and while there, they were interviewed by members of the WVSP who were investigating the shooting incident at their home; Plaintiffs were separated and provided statements. (Id. at 32) Michael Sr. alleges that he "felt that I had to give this statement" and did not learn until later that he did not have to, however, he informed First Sergeant A.S. Pardue that "all the gunfire was coming into the house", that he was unable to open the door, and that the Decedent was asleep in his room and "probably heard the commotion and rushed in to help." (Id.) Michael Sr. alleges that "[t]hey keep asking me if Michael Jr. had a gun. At this time I told them that if something like this is happening at a back door we usually come prepared." (Id.) Michael Sr. alleges that First Sergeant Pardue

asked questions he "really couldn't answer", he asserts that First Sergeant Pardue did not "like what I had to say." (Id. at 32-33) Upon discharge from the hospital, Michael Sr. alleged that he was arrested by four CCSD deputies, and that Defendant McQuaid brought him before a magistrate, and later transported to the Western Regional Jail. (Id. at 33)

Michael Sr. alleges that Defendants McQuaid and Cremeans "abused their powers and fabricated evidence to create false Criminal Complaints in the Magistrate Court of Cabell County" against both him and the Decedent. (Id.) Michael Sr. alleges that Defendant McQuaid filed two "fraudulent" criminal complaints against him: the first is identified at case number 19M06F00814, for felony offense of attempted to commit a felony, first degree murder, "by acting as an accessory before the fact x2". (Id. at 33-34) Michael Sr. states that the first criminal complaint alleged the following:

> On October 30, 2019 at approximately 6:33 pm., at (4306) Blue Sulphur Road Ona WV 25545. The suspect encountered deputies from the Cabell County Sheriff's Office who were attempting to serve a search warrant at that location regarding a stolen firearm that his son (Michael L. Pinkerman II) had in his possession earlier on this date. After Identifying themselves and repeatedly advising the suspect to open the door of the residence pursuant to a search warrant, the suspect braced himself against the door. As the deputies continued to advise the suspect to open the door, he was observed having some kind of communication with his son, Michael Lane Pinkerman II (the offender who had an arrest warrant against him for a prior listed crime).

> As the door was breached the suspect forcibly closed the door, again while having verbal communication with his son. As the door was forced open again, gunfire from within the residence began and two deputies were struck multiple times. The suspect was still actively blocking / attempting to block entry into the residence before being forcefully removed from the residence. Deputies maintained their positions for a brief period before successfully entering the residence. The actions of the father, Michael Lane Pinkerman allowed the original suspect of the warrant to attempt to commit murder against Corporal James Johnston, by shooting him multiple times.

8

(Id.) Michael Sr. alleges that Defendant McQuaid filed a second "fraudulent" criminal complaint against him that concerned the shooting of Defendant Cremeans. (Id. at 34)

As indicated in their companion civil action, Plaintiffs also indicate that that Defendants alleged a "fake stolen Beretta", "illegal search warrants and criminal complaints", as well as a "fake bomb threat" to access their home and personal effects. (Id. at 34-35) Plaintiffs further allege that Defendant Zerkle used the media to cover up the crimes committed by his deputies. (Id. at 35-37)

Plaintiffs' alleged "First Cause of Action" pursuant to 42 U.S.C. § 1983 (hereinafter referred to as "Count 1"), they allege that Defendants used excessive force and deadly force that violated the Decedent's constitutional rights. (Id. at 37-39)

In Plaintiffs' "Second Cause of Action" under Section 1983 (hereinafter referred to as "Count 2"), they allege Defendants violated the Decedent's constitutional rights to be free from unreasonable and unlawful searches and seizures. (Id. at 39-41)

For their "Third Cause of Action" (hereinafter referred to as "Count 3"), Plaintiffs allege Defendants invaded the Decedent's privacy rights by sharing photos of his body on their personal cell phones. (Id. at 42-43)

Plaintiffs' "Fourth Cause of Action" concerns a Section 1983 claim (hereinafter referred to as "Count 4") concerns Defendants Zerkle and Cabell County Commission, and allege that these Defendants are responsible for the acts of their deputies, had a "custom, policy and practice" of allowing deputies to use excessive force, including "No Knock Raids", and knew their actions were in violation of the Decedent's constitutional rights. (Id. at 43-47)

For their "Fifth Cause of Action" (hereinafter referred to as "Count 5"), Plaintiffs allege that "all Defendants" deviated from their duties of care as law enforcement officials, and were

negligent and grossly negligent in their actions causing damages to Plaintiffs, including the loss of their only son, the Decedent. (Id. at 47-49)

For their "Sixth Cause of Action" (hereinafter referred to as "Count 6"), Plaintiffs claim "supervisory negligence" against Defendants Adkins and Enochs for their failure to train and supervise Defendants McQuaid, Vincent, Cremeans, Johnston, Hinchman, Rodgers, Siebel, White, Render, Parsons, Stevens, McFann, and Neil, as this breach of duty caused harm to Plaintiffs, including physical pain and emotional distress, humiliation, indignity, including negligent infliction of emotional distress as a result of witnessing the shooting death of the Decedent; Plaintiffs state they are also entitled to punitive damages for gross negligence. (Id. at 49-50)

As it relates to the "Employing Defendants", Plaintiffs assert their "Seventh Cause of Action" (hereinafter referred to as "Count 7"), which concerns negligent and gross hiring, supervision, training, and retention claims. (Id. at 50-52)

For their "Eighth Cause of Action" (hereinafter referred to as "Count 8"), Plaintiffs allege their "Wrongful Death" claim under W. Va. Code § 44-1-14A due to the loss of their son, the Decedent, including loss of companionship; Plaintiff suffered mental anguish as a result. (Id. at 52-53)

Plaintiffs' ninth cause of action (hereinafter referred to as "Count 9") concerns their survival claim pursuant to W. Va. Code § 44-1-14A. (Id. at 53)

Finally, Plaintiff's tenth cause of action (hereinafter referred to as "Count 10") concerns damages to the Pinkerman family, including the Decedent's physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, loss of consortium, and loss of life, in addition to Plaintiffs' loss of support, inheritance, earning capacity, and household services. (Id. at 53-54)

In their prayer for relief, Plaintiffs ask this Court to grant them judgment against Defendants for "compensatory damages for past and future lost wages, reputational harm, mental and emotional distress, anxiety, loss of companionship, and all other general damages alleged and proved at the time of trial" as well as expert witness fees, attorney fees, "[t]axable costs incurred herein", pre and post judgment interest, punitive damages, and for all such other relief to which they may be entitled. (Id. at 54)

### Defendants WVSP and Losh's Argument for Dismissal

As an initial matter, these Defendants contend that neither were involved during the execution of the search warrant during the events allegedly occurring on October 30, 3019, and that Plaintiffs have only specifically alleged that Defendant Losh was involved in the post-incident investigation, taking photos of the decedent, Michael Jr., and showed these photos to other governmental personnel and friends – Plaintiffs have alleged no substantive claims against Defendant WVSP. (ECF No. 34 at 2)

These Defendants argue that Plaintiffs claims as alleged against them fail as a matter of law because in their official capacities, they are immune from liability under Section 1983 and because Defendant WVSP is a state agency and Defendant Losh is an employee of the state agency, neither can be sued under Section 1983 as they are not considered "persons" amenable to such suits. Thus, Plaintiffs Section 1983 claims must be dismissed. (Id. at 5-6)

Regarding Plaintiffs' negligence and gross negligence claims against these Defendants, including negligent and gross negligent hiring, supervision, training, and retention against Defendant WVSP, despite such claims against Defendant WVSP fail under Section 1983, both Defendants enjoy qualified immunity because West Virginia law bars negligence claims; additionally, this Court has previously held such claims are barred. (Id. at 6-7) Further, Plaintiffs

have alleged Defendant Losh acted intentionally, by sharing photos of the Decedent with government personal and friends, therefore, their claims of simple negligence fail as a matter of law. (Id. at 6-7)

Regarding Plaintiffs' claims of invasion of privacy as they relate to the Decedent, Defendants argue this claim does not survive the death of an individual at common law or under statute. (Id. at 7) Therefore, this claim fails as a matter of law and should be dismissed. (Id.) As an additional matter, Defendants argue that even if Plaintiffs had standing to pursue an invasion of privacy claim, West Virginia statute only provides a one-year statute of limitations for such personal tort claims, which has long expired. (Id. at 7-8)

Defendant Losh asserts that Plaintiffs' Section 1983 claims, including their survival claim (as it is dependent upon the success of the 1983 claims) against him individually also fail as a matter of law, as there are no substantive allegations against him – Plaintiffs have only alleged deputies of the Cabell County Sheriff's Department were involved in the execution of the search warrant, as well as in the alleged use of force and illegal entry. (Id. at 8-9) Because Defendant Losh was not present for the entry or use of force, these Section 1983 claims against him should be dismissed. (Id. at 9) Defendant Losh further asserts that Plaintiffs' generalized negligence claims against him, involving breaches of duty of care related to the shooting incident, entry of Plaintiffs' residence and alleged falsification of police reports, as none of these have been specifically plead against Defendant Losh, thus, those claims should be dismissed as well. (Id.)

These Defendants further argue that Plaintiffs' wrongful death claim fails as a matter of law against these Defendants because they did not participate in the alleged use of force or entry into Plaintiffs' home. (Id. at 10) Ultimately, Defendants contend that Plaintiffs' cause of action against them should be dismissed with prejudice. (Id. at 11)

12

**Defendants Village of Barboursville and McNeil's Argument for Dismissal**[7]

These Defendants (referred to collectively as "the Barboursville Defendants") assert that the Barboursville Police Department is not a properly named party in this action, is not a separate suable entity, and therefore, this party should be dismissed from this action. (ECF No. 70 at 8) The Barboursville Defendants further point out that neither are alleged to have been involved in obtaining or executing the search warrant, in the alleged forced entry or excessive force claims as set forth in Count 1 and 2 of Plaintiffs' Complaint; in sum, Plaintiffs have pled no factual allegations against Defendants Village of Barboursville or McNeil upon which relief can be granted, thus dismissal is appropriate. (Id. at 8-10) Even if the Court were to find that Plaintiffs have alleged a viable Fourth Amendment claim against Defendant McNeil, he is entitled to qualified immunity: there is no evidence he violated any clearly established constitutional right, and there is no allegation that he used any level of force against Plaintiffs or the Decedent, let alone searched Plaintiffs' property. (Id. at 11-12)

Regarding Plaintiffs' claims concerning a "custom and policy" envisioned by Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978), the Barboursville Defendants argue that Plaintiffs' allegations fail to demonstrate any constitutional violations as related to these Defendants and such claims should also be dismissed. (Id. at 12-13)

Regarding Plaintiffs' invasion of privacy claims, no allegations concern the Barboursville Defendants, therefore this claim should be dismissed. (Id. at 13-14)

Regarding Plaintiffs' negligence claims, the Barboursville Defendants assert statutory immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act,

---

[7] The undersigned focuses on the arguments set forth in the "Amended" Memorandum of Law in support of these Defendants' motion to dismiss, though from all appearances, it does not seem to deviate substantially or substantively from the initial memorandum of law.

notwithstanding that Plaintiffs' claims sound in intentional acts. (Id. at 16-17) None of these alleged negligence claims concern the Barboursville Defendants, regardless, W. Va. Code § 29-12A-5(a)(5) affords immunity to the Village of Barboursville, to the extent Plaintiffs allege any failure on its end to provide police, law enforcement or fire protection to the public. (Id.) The Barboursville Defendants argue that the statute endorses the common law special duty rule and does not immunize a breach of a special duty to provide, or a method of providing, such protection to a particular individual, however, the only allegation Plaintiffs make against Defendant McNeil is that he informed Plaintiffs that their son was deceased and that he made a "bomb threat" after the relevant events in question. (Id.) Neither of these allegations form the basis for a special duty owed to Michael Sr. and thus, these claims should be dismissed. (Id.) Further, Defendant McNeil is entitled to immunity on an individual basis because W. Va. Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability, and none of Plaintiffs' allegations support any of the enumerated exceptions endorsed by this statute. (Id. at 17-18) Therefore, the negligence claim against Defendant McNeil in his individual capacity should be dismissed. (Id. at 18)

As for Plaintiffs' claims surrounding negligent hiring, supervision, training, and retention, again, the Barboursville Defendants point out that none of the allegations set forth in Plaintiffs' Complaint provide any foundational or factual basis for any of these claims against these Defendants whatsoever; further, Plaintiffs have not pled any facts supporting any causal connection between these claims implicating the Barboursville Defendants to the Decedent's death. (Id. at 18-21) Accordingly, these claims against the Barboursville Defendants should be dismissed. (Id. at 21)

The Barboursville Defendants contend that Plaintiffs' wrongful death and survival claims are redundant, but nevertheless fail to establish sufficient facts against them, thus warrants dismissal. (Id. at 21-22) Plaintiffs' tenth cause of action only sets forth a claim for damages. (Id. at 22) Plaintiffs' Complaint should be dismissed against these Defendants. (Id.)

**Plaintiffs' Response to Defendants WVSP and Losh's Motion**

Plaintiffs appear to reassert their Counts 1 and 2 claims against these Defendants as set forth in their Complaint, but also suggest that discovery will assist in clarifying any questions concerning them. (ECF No. 74 at 3) However, regarding Count 3 concerning their invasion of privacy claim, Plaintiffs insist that Defendant Losh shared pictures of the crime scene that Plaintiffs were unaware of until they receive "the first small batch of Discovery January 15, 2021" and asserts that his cause of action accrued then. (Id. at 3-4) Plaintiffs allude to "3 CD's" that contained "793" crime scene pictures, and "265 pages of repetitive information" that included "60 pages of low quality Black and White Photos" they ostensibly received from the prosecuting attorney during the underlying criminal proceedings. (Id. at 4) Plaintiffs then state that "[b]ut for the [prosecuting attorney] to have claimed they never received a copy of the [a]utopsy [r]eport this leaves me to believe that the only one who would have done this was [Defendant] Losh himself." (Id.)

Plaintiffs specify that ¶¶ 110-111 in Count 4[8], pertain to Defendants WVSP and Losh, and insists Defendant WVSP is responsible for its employees. (Id. at 5) Plaintiffs indicate that ¶¶ 126-127 and subsections identified as "j., k., l., m., n." in Count 5 apply to Defendant Losh, but also includes Defendant WVSP[9]. (Id.) Plaintiffs allege that Defendant Losh "and other WVSP

---

[8] The undersigned notes Plaintiffs are referencing paragraphs contained in their personal cause of action filed in case number 3:21-cv-00579.

[9] As noted in footnote 8, once again, Plaintiffs are referencing paragraphs contained in their personal cause of action filed in case number 3:21-cv-00579.

employees" improperly relied upon "unverified" and "uninvestigated" statements provided by Defendant Zerkle and "his" deputies and further allege that Defendant Losh "ignored, suppressed and tampered with [e]vidence" related to the investigation surrounding the underlying criminal proceeding. (Id. at 6-7) Plaintiffs suggest irregularities concerning the alleged stolen firearms and reassert there was no probable cause supporting the search warrant issued regarding the stolen Beretta on October 30, 2019. (Id. at 6-8) Plaintiffs assert that the investigation is ongoing. (Id.)

Plaintiffs appear to simply restate their claims as set forth in Count 7. (Id. at 8-9)

Plaintiffs allege that they included Defendants WVSP and Losh because the "purpose of qualified immunity is **to protect all but 'the plainly incompetent or those who knowingly violate the law**[]' " and state that "[Defendant] Losh is either incompetent, or knowingly had violated the law." (Id. at 9) (**bold** in original)

Plaintiffs appear to quote or cut and paste caselaw that supports the proposition that the Eleventh Amendment does not bar a claim for damages against a state official where there has been a deprivation of a federal right. (Id. at 10-11)

Plaintiffs apologize to the Court and to defense counsel acknowledging that they possess discovery that can back up their claims, but note that there is additional discovery forthcoming and will supplement upon receipt. (Id. at 11-12)

**Plaintiffs' Response to the Barboursville Defendants**

Plaintiffs indicate that Defendant Zerkle and Defendant McNeil are "friends" and indicate that further discovery will assist Plaintiffs' investigation into this matter, but otherwise, oppose these Defendants' motion to dismiss. (ECF No. 80)

**Defendants WVSP and Losh's Reply to Plaintiffs' Response in Opposition**

These Defendants emphasize that Plaintiffs' Response relies on facts or allegations that concern other Defendants in this action, and maintain that Plaintiffs' negligence claims in Counts 4 and 6 should be dismissed against them due to their qualified immunities to such claims. (ECF No. 78 at 1-2) Defendants WVSP and Losh argue that Plaintiffs lack standing to pursue their invasion of privacy claim and such claims cannot be brought on behalf of the Decedent; in any event, these Defendants argue the statute of limitations has expired on this claim (Id. at 2-3) Defendants reiterate that Plaintiffs Counts 1, 2, 5, 7, 8, and 9 should be dismissed as a matter of law against these Defendants. (Id. at 3-5)

### "Plaintiffs' Final Remarks"

Plaintiffs indicate that discovery will uncover the truth as to what transpired and oppose Defendants' motions to dismiss their complaint. (ECF No. 82)

### THE STANDARD

A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25 (1992). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992).

Though this Court is required to liberally construe *pro se* documents and hold them to a less stringent standard than those drafted by attorneys[10], liberal construction "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in

---

[10] Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978).

the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." <u>Miller v. Jack</u>, 2007 WL 2050409, at *3 (N.D.W.Va. 2007) (citing <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387 (4th Cir.1990)).

Moreover, Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Fed.R.Civ.P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6).

The required "short and plain statement" must provide " 'fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <em>overruled on other grounds</em>, <u>Twombly</u>, 550 U.S. at 562-563)); see also <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." <u>Twombly</u>, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual

allegations [sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.

Application of the Rule 12(b)(6) standard also requires that the court " 'accept as true all of the factual allegations contained in the complaint....' " <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (quoting <u>Twombly</u>, 550 U.S. at 555); see also <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

## <u>ANALYSIS</u>

As noted *supra*, this case is grounded in the same series of events Plaintiffs have asserted in their own civil action against these same Defendants filed contemporaneously with this action. Plaintiffs have asserted a myriad of claims alleging a conspiracy among the Defendants to violate their son's constitutional rights, ultimately causing his death. While Plaintiff Michael Sr. was subsequently indicted in State court following the incident, those criminal proceedings have not yet concluded; Plaintiffs complain that they have yet to receive all discovery in the underlying criminal proceeding. Plaintiffs' Complaint sets forth numerous claims on behalf of the Decedent, including but not limited to, Section 1983 claims for violations of the Decedent's Fourth Amendment rights against unreasonable search and seizure as well as excessive force. See, e.g., <u>Brown v. Gilmore</u>, 278 F.3d 362, 367-368 (4th Cir. 2002). Plaintiffs allege a lack of probable cause for the search warrants used in the underlying investigation, and have asserted that Defendants relied upon fraud or false information to obtain them. To that extent, these claims appear to be

sufficient to state plausible Fourth Amendment claims for fabrication of evidence. See Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005). For Plaintiffs to prevail on a claim of evidence fabrication, they must demonstrate proof that Defendants fabricated evidence and that the fabrication resulted in a deprivation of the Decedent's constitutional rights. Id.; see also Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014).

While the Decedent himself is not subject of the pending criminal proceeding, Plaintiffs own claims of constitutional violations concerning the underlying proceeding and in this action are intertwined, which may implicate the Younger Abstention Doctrine. See Younger v. Harris, 401 U.S. 37, 44 (1971)(federal courts are discouraged from interfering with a state's pending criminal proceeding, barring extraordinary circumstances); Nivens v. Gilchrist, 319 F.3d 151 (4th Cir. 2003). However, as the undersigned noted in Plaintiffs' companion case, number 3:21-cv-00579, courts have held that rather than abstain and dismissing an action, it may be appropriate to stay such suits especially where a plaintiff seeks monetary relief and that concern the same issues that are pending in a state court. See Stewart v. Beaufort County, 481 F.Supp.2d 483 (D.S.C. Feb. 6, 2007) (court stayed civil rights claims brought under Section 1983 pending a decision in pending state criminal proceeding where issues regarding excessive force would result in simultaneous litigation of the same issues); see also, Lee v. Singleton, 2012 WL 1896062, at *15-16 (D.S.C. Jan. 9, 2012); Suggs v. Brannon, 894 F.2d 274, 279-280 (4th Cir. 1986). Staying a federal action can also help protect a plaintiff's claims for damages that cannot be pursued in the parallel state proceedings and allow for a return to the federal court to reassert claims without being time-barred. See Wirtz v. Oconee County Sheriff's Dept., 2013 WL 5372795, at *5 (D.S.C. Sept. 24, 2013) (internal citations omitted).

It is apparent that Plaintiffs are asserting similar claims of unconstitutional conduct in the state criminal proceedings, and that the State court would address such matters. Since Plaintiffs seek monetary damages for these alleged constitutional violations, and should the State court find the search and search was unlawful, Plaintiffs would be unable to pursue damages in those criminal proceedings, thus, a stay in this case for these claims is appropriate. Further, should the State court find that the search, seizure and arrest of Plaintiffs/Michael Sr. were lawful, those decisions would be binding on this Court, and preclude Plaintiffs from asserting these claims were unlawful in a Section 1983 claim for damages. See Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (holding that a state prisoner cannot base a Section 1983 action on a ground that would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement"). In either case, a stay is appropriate to allow the state criminal proceedings to eventually conclude.

As for Plaintiffs' invasion of privacy claim on behalf of the Decedent, it is noted that such a claim does not involve a deprivation of constitutional rights that is actionable under Section 1983. Graham v. Lott, 2012 WL 1440073, at *5 (D.S.C. Mar. 27, 2012). However, it is also noted that such a State law claim can be heard by a federal court along with federal law claims through the exercise of "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367(a) in the event that the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  While the undersigned acknowledges that there is a genuine dispute as to whether Plaintiffs timely brought the invasion of privacy claim, it is clear that should this claim be dismissed to be properly brought before a State court, the applicable statute of limitations has long since expired. See W. Va. Code § 55-2-12; Christmas v. American Cyanamid Co., 578 F.Supp. 63 (N.D.W.Va. 1983). Again, staying this case as it relates to this particular claim

may be appropriate given that this issue would be time-barred if refiled in state court. See Wirtz v. Oconee County Sheriff's Dept., 2013 WL 5372795, at *5.

This Court has instructed Plaintiffs to obtain counsel in order to prosecute these claims, including their wrongful death and survival claims, and has allowed Plaintiffs additional time to secure counsel. Unfortunately, despite their efforts to comply with the Court's order, Plaintiffs have been unsuccessful to date. To that extent, Plaintiffs now request the Court to either extend them additional time, or to similarly stay this case (ECF No. 86). While there is no indication that there will be an imminent resolution of the underlying criminal matters against Michael Sr., the undersigned observes that this may be the primary reason that prevents Plaintiffs from obtaining counsel to pursue their claims on behalf of the Decedent's estate. Given the fact that this civil action involves the same factual allegations and surrounding events as the companion case filed in this Court, and finding that there is no prejudice that would befall Defendants should this matter be stayed pending resolution of the State court criminal proceeding, the undersigned would recommend that Plaintiffs' request to stay these proceedings as well.

As for Defendant Barboursville Police Department, Plaintiffs do not contest that it is an improper party, having conceded listing this party instead of the Village of Barboursville "was a mistake" (ECF No. 82 at 6), but Plaintiffs "certainly do not support Defendants' motion to dismiss" (ECF No. 81 at 2). Since Plaintiffs will not be deprived of their claims should this Defendant be replaced with the proper party, the Village of Barboursville, it is appropriate to simply substitute this Defendant for the Barboursville Police Department.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that: the Village of Barboursville be

substituted for the Barboursville Police Department as the proper party herein; Defendants' motions to dismiss Plaintiffs' claims or causes of action herein be **DENIED** at this time; to the extent that Plaintiffs' letter-form motion requests a stay of this matter (ECF No. 86) be **GRANTED**[11]; and Plaintiffs' claims be **STAYED** and **REMOVED from the Court's active docket** until the final termination of Michael Sr.'s pending state court criminal proceedings, at which time Plaintiffs should petition this Court to lift the stay in this action. Plaintiffs should be directed to apprise the Court of the status of the pending state criminal proceedings every six (6) months and warned that failure to do so may result in sanctions, including but not limited to dismissal of this action.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

---

[11] To the extent Plaintiffs request additional time in order to obtain counsel, it is **ORDERED** that the letter-form motion is **DENIED** as **MOOT** given the proposed recommendation that the Court stay this proceeding.

(1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff and to counsel of record.

ENTER: May 11, 2022.



Omar J. Aboulhosn
United States Magistrate Judge